BOOTH *vs.* AMMERMAN.

*In the matter of the Estate of* CHARLES E. CORNELL, *deceased.*

WHERE the will contained a bequest to the testator's sister of " the interest upon fifteen hundred dollars, in case she should become a widow, during her widowhood, payable annually," and the executors were authorized to invest the estate in such sums, and upon such terms as they might deem necessary for " the due execution of the will,"—*Held*, that the legacy to the sister was not an annuity, but simply a gift of interest or income.

An annuity is a stated sum per annum, payable annually unless otherwise directed. It becomes payable at the end of a year after the testator's decease, because the will so provides.

All bequests are due at the expiration of the year, in the absence of any special provisions to the contrary ; and the duty to pay an annuity arises contemporaneously with the efflux of the period the law has allowed for the settlement of the estate.

The income or interest of a certain fund is not an annuity, but simply profits to be earned, and although directed to be paid annually, that relates only to the mode of payment, and does not change the character of the bequest. In such a case, it does not become the duty of the executors to invest the principal sum until the end of a year, and the interest will not become payable until the end of the second year.

But when the testator has provided that the investment be made at an earlier period, the will must be followed. A bequest to a legatee, " in case she shall become a widow," falls due when the specified contingency occurs ; and where the legatee became a widow within the year, it was *held*, that she was entitled to interest on her legacy from the commencement of her widowhood.

Taxes and commissions on a trust fund must be deducted from the income due to the life-tenant, and are not a charge on the general estate.

Where the income of a certain sum is given to a party for life or a shorter period, commissions on the interest, and taxes on the trust fund, must be deducted from the income, and are not a charge on the general estate.

MORTIMER PORTER, *for Legatee.*

I. The gift in favor of Mrs. Booth is an annuity. The will gives her *the interest of* $1500 *while she is a widow.* It does not direct $1500 to be invested, and the interest realized to be paid her. The term "interest on the sum of $1500" is merely a way of expressing the annuity or yearly sum of $105, which is charged on the whole estate. This annuity commences at the death of her husband. (*Dayton's Surrogate*, 2d ed'n., 414, 415; *Williams on Ex'rs.*, 1192–3; 2 *Edw. Ch. Rep.*, 236.) The legatee is entitled to interest, in such a case, from the time the term commences. (*Dayton*, 429.)

II. For the above reasons there is no pretence for charging the annuitant with the *annual taxes* on $1500. The executors might as well charge her with commissions, expenses of investing, or losses. She must have her clear $105 a year, and the whole estate is chargeable with it.

III. But even if this were one of the cases, in which the executors would have a period allowed them to make investments, the last part of the 27th clause of the will made it the duty of the executors to pay the interest of the $1500, when Mrs. Booth is not a widow, to certain charitable uses, and their obligation to do this commenced at the death of the testator, in October, 1854; and ample time was given them to do so before the death of Mr. Booth, 30th May, 1855. Moreover, the investments were already made by the testator.

IV. But the Surrogate will notice, that the bounty of the testator is bestowed chiefly upon strangers to his blood and distant relatives. No kindred nearer than a cousin is mentioned, except his sister, Mrs. Booth. Can it be possible that he intended the small income left to her, for life only, should be curtailed by a forced construction as to the time it should

take effect, and by deductions for *annual taxes?* (*Drake* vs. *Price*, 1 *Selden*, 430; 2 *Barb. Ch. R.*, 430.)

W. B. WINTERTON, *for Executors.*

I. The interest on $1500, bequeathed to Mrs. Booth, did not accrue until after the 6th November, 1855, and is not payable until one year from that date. The investment could not be made until all claims against the estate were ascertained and adjusted, and this was not done until about the 6th day of November, 1855. The interest could not accrue *to the* executors till the investment was made, and of course could not accrue to Mrs. Booth until that time. This was a year from the grant of letters testamentary. (2 *R. S. p.* 275; *Dayton on Surr.*, 403, 415; 2 *R. S., p.* 48.) This is a bequest of income. It is not an annuity. (*Lawrence* vs. *Embree*, 3 *Brad. Surr. R.*, 365; *Van Wyck* vs. *Bloodgood*, 1 *Brad. Surr. Rep.*, 154.) The will fixes no date or time so specifically as to show the intention of the testator to except this from the rule applicable to general legacies.

II. The executors are entitled to deduct their commissions from the interest payable to Mrs. Booth. (*Dayton, p.* 494; *Drake* vs. *Price*, 1 *Selden*, 430; *Westerfield* vs. *Westerfield*, 1 *Brad. Surr. Rep.*, 199; *Pinckney* vs. *Pinckney*, 1 *Brad. Surr. Rep.*, 269.)

III. The executors are also entitled to deduct the proportionate share of taxes from this interest. (*Pinckney* vs. *Pinckney, cited supra*; *W'ms. on Ex'rs.*, 1398; *Hepburn* vs. *Hepburn*, 2 *Brad. Surr. Rep.*, 76; *Parkinson* vs. *Parkinson, Ib.*, p. 79; *Lawrence* vs. *Holden*, 3 *Ib.*, 143; *Stillwell* vs. *Doughty*, 2 *Ib.*, 311.)

(*a.*) It is not unreasonable that the person who enjoys the income, should pay all incidental legal expenses, connected with the investment out of which it grows. Drake *vs.* Price, cited above, settles the question as to commissions. The same principle applies to taxes. They are included under

the same rule with expenses and commissions in Pinckney *vs.* Pinckney, cited *supra*.

(*b.*) It is unreasonable that the residuum should pay taxes twice.

THE SURROGATE.—The testator gave to his sister, Louisa Booth, " the interest upon fifteen hundred dollars, in case she should become a widow, during her widowhood, payable annually." At her death the principal sum was given over to certain charitable uses, and it was provided that the interest thereon for so much of her life as she should not be a widow, should be applied to the same uses. The will contained numerous other bequests of the " interest" upon certain amounts to various legatees, " payable annually during life," and on their decease the principal sums were given over to charitable uses. The executors were authorized to invest the estate, in such sums and upon such terms as they might deem necessary for " the due execution" of the will. The testator died in October, 1854, and Mrs. Booth became a widow in May, 1855. I am now asked to determine when the legacy became due, and from what time it bears interest.

There must be some special direction in a will to take a legacy out of the usual rule, that bequests are not payable until one year after the testator's decease, and begin to earn interest only from the period when they fall due. A distinction has long been recognized in the books, in favor of annuities, and it is now well settled that the first payment of an annuity becomes due at the end of the first year from the testator's death. In *Eyre* vs. *Golding*, 5 *Binney*, 472, there was a bequest of " the interest of £400," to be paid the legatee " annually during her natural life," and the court said, " there is a difference in a legacy of a sum of money to one for term of life, and a bequest of a sum to be paid annually for life. In the former case, the legacy not being payable till the end of a year from the testator's death, carries no interest for that year. But in the latter, the first payment of the annuity must be

made at the end of the first year, or the intention of the testator is not complied with. You must count the time immediately from his death, or the legatee will not receive the annuity annually during his life." The effect of this decision is to place the gift of the interest of a certain sum annually, on the same footing as an annuity. This view might seem to be supported by the decision of Chancellor Walworth, in *Craig* vs. *Craig*, 3 *Barb. Ch. R.*, 76, where the executors were directed to invest " a sum of money sufficient to produce in *legal interest* at least five hundred dollars per annum." The court treated this as an annuity, and decided that five hundred dollars should be raised for the first year—but the legatee was the testator's son, and a lunatic, and the will, expressly declared the bequest to be for the purpose of maintenance and support. These facts would I think have justified payment the first year, as evidently required by the intent of the will, independently of the question whether the legacy should have been treated as an annuity.

The general doctrine on this subject was laid down by Lord Eldon, in *Gibson* vs. *Bott*, 7 *Vesey*, 96, who there said, " if an annuity is given, the first payment is paid at the end of the year from the death ; but if a legacy is given for life, with remainder over, no interest is due until the end of two years. It is only interest of the legacy, and till the legacy is payable, there is no fund to produce interest." This is clear enough, but it still remains open to determine what is an annuity, and what a mere legacy for life. It seems to have been doubted, whether if a sum of money were directed to be placed out, to produce an annuity, that is to be considered as a legacy payable in a year, or as an annuity payable from the death. An annuity is a stated sum per annum, payable annually unless otherwise directed. It is not income or profits, nor indeterminate in amount varying according to the income or profits, though a certain fund may be provided, out of which it is to be payable. The reason why it is payable at the end of the first year is simply because the testator has so directed. All bequests are due at the expiration or

the year, in the absence of any special provision to the contrary, and the duty to pay the annuity arises contemporaneously with the efflux of the period the law has allowed for the settlement of the estate. The income or interest of a certain fund is not an annuity, but simply profits of certain property, to be earned, and which may vary more or less. If, however, as in *Craig* vs. *Craig*, there be a clear direction to raise a certain sum annually, that partakes of the essence of an annuity, notwithstanding the mode of raising it by interest on investments be prescribed. And so, on the other hand, if the testator bequeath the interest of a stated amount, that cannot be treated as an annuity, but only as a gift of income. But if, as in *Eyre* vs. *Golding*, the legacy be of " the interest *annually*," or, as in this case, " the interest" "payable annually," what are we to say? Is it an annuity, or merely an ordinary legacy? It is not a stated sum, but may be more or less, according to the earnings of the capital. In this respect it does not possess the characteristic of an annuity, but it is merely interest or income. It is payable annually, and in this respect it possesses a characteristic common alike to an annuity or to interest, and not peculiar to either. In the present case, the testator gives " the interest upon fifteen hundred dollars." The gift is of the interest—and that is the entire substance of the gift; the mode of payment is " annually," and that relates to the payment and not to the gift. The thing given is the profits of a certain portion of the estate, to be separated in money and invested. It is given as " interest" of a demonstrated capital, and interest cannot therefore begin to accrue until the capital has become due. The provisions of the will would therefore seem to be satisfied by making the investment at the end of the year, and paying the interest annually to the life tenant. The will expressly provides for this investment, and on the decease of the legatee, to whom the interest is bequeathed for life, gives the *corpus* or capital over to charitable uses. This bequest is substantially a legacy for life, with remainder over, and the legacy would not become due so as to draw interest till

the end of the year, unless otherwise specially directed. I do not think the direction to pay the interest annually sufficient to take the case out of the general rule. In *Gibson* vs. *Bott*, 7 *Vesey*, 96, the will provided for an investment, and the payment of the " yearly interest ;" in *Lowndes* vs. *Lowndes*, 15 *Vesey*, 301, for an investment and the payment of " the dividends, interest, or yearly income ;" and in *Raven* vs. *Waite*, 1 *Swanston*, 553, for an investment and the payment of " the interest and proceeds." In none of these cases was interest allowed until the end of the second year.

In relation to the bequest to Mrs. Booth, it is to be observed, however, that it takes effect " in case she shall become a widow." Where the will provides a time when the legacy is to become due, whether by naming a period, or prescribing a condition or contingency, the legacy becomes due when the prescribed time has arrived, or the contingency has occurred, although it may be within the year. Thus, in *Coventry* vs. *Higgins*, 14 *Simon.*, 30, legacies were given to sons on attaining twenty-one years, and to daughters on marriage. The sons attained twenty-one, and the daughters married, before the testator's decease ; and it was held that the legacies became due immediately on the testator's death, and carried interest from that time. So, also, in *Pickwick* vs. *Gibbes*, 1 *Beavan*, 271, trustees were directed, as soon as convenient, after the death of the testator's wife, to raise £10,000, for his nephew, and apply the income towards maintenance. The wife died before the testator, and Lord Langdale decided that the nephew was entitled to interest from the testator's death, when the legacy by the terms of the will became due. The gift to Mrs. Booth became operative on a certain contingency—on her becoming a widow—and was to be continued during widowhood. It took effect within the year, and on the occurrence of the condition it became the duty of the executors to make the investment, and pay her the interest annually, from that period. It is a gift on widowhood, and like a gift on majority or marriage, becomes due on the event prescribed by the testator, whether it happen before or after the

year.. There must be a decree accordingly, giving the applicant the interest from the time she became a widow. The taxes which the executors may be compelled to pay, and also the commissions on the interest payable annually to the legatee, must come out of the interest, and are not a charge on the general estate. If this had been an annuity, the rule might perhaps have been otherwise, but being merely the gift of interest or income, the fund must bear its own charges.