M'KIE V. CLARK.

NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—May, 1885.

McKIE *v.* CLARK.

*In the matter of the judicial settlement of the account
of* JOHN M. CLARK *and another, as executors of
the will of* THOMAS McKIE, *deceased.*

Testator's will, besides bequeathing various specific and pecuniary legacies,
directed the executors to pay cash, or assign securities, to a trust com-
pany to the amount of $200,000, for the benefit of his widow for life,
after whose death the fund was to be *repaid to the executors* ; it fur-
ther gave the net income of the remainder of his estate, during the
widow's life, to his children equally, providing that such remainder
should be held by and in charge of the executors, the rents and income
be collected by them, the personal estate kept invested, and the said
net income paid over semiannually, or as often as practicable ; and
directed the executors, upon the widow's death, to divide the entire
estate, including the $200,000, into equal parts, and pay over or assign
the same to the children.

Upon an accounting in 1878, the executors were each allowed half com-
missions on all assets received by them, and the same upon all sums
paid out, as well as upon the balance directed by the decree to be
retained in their hands until a final distribution. That decree pro-
vided " that they" (the executors) "retain to themselves, in their
capacity of trustees, all the remainder of said moneys," etc., " to be
held and accounted for by them as such trustees, upon the trusts and
in accordance with the provisions and directions" in the will. The
widow having died, the executors, upon a judicial settlement of their
account, had with a view to a final distribution, claimed full commis-
sions upon the entire amount undistributed at the time of the former
accounting.—

*Held,* that the will required, from the persons to whom the estate was com-
mitted, the employment of no other than purely executorial functions ;
that the decree of 1878, in conferring upon them the new name of trust-
ees, did not change their real character, or confer upon them any new
rights or privileges ; and, that as to such funds as had been in the
executors' hands since their former accounting, their claim to commis-
sions should be disallowed.

Johnson v. Lawrence, 95 *N. Y.,* 154—compared; Laytin v. Davidson, *id.,*
263—distinguished.

DETERMINATION of question as to executors' commissions, arising upon the judicial settlement of their account. The facts are stated in the opinion.

JACOB F. MILLER, *for executors.*

EMMET & ROBINSON, *for N. Y. L. Ins. & T. Co., trustee.*

COUDERT BROS., *for Chas. McKie.*

R. E. ROBINSON, *special guardian for Thomas McKie.*

THE SURROGATE.—A decree is about to be entered, settling the accounts of this testator's executors. What commissions shall it direct the accounting parties to retain? The provisions of the testator's will are substantially as follows:

By the first article, certain specific legacies and $10,000 in cash are given to his wife. By the second, his executors are instructed to pay over to the N. Y. Life Insurance & Trust Co. the sum of $200,000 in cash, or to assign and transfer to such company securities of that value. The company is directed to keep such fund invested, so that it shall produce interest or income, and to pay such interest or income to the testator's widow during her lifetime. The second article further provides that, at the death of the widow, the fund shall be repaid to the executors. Article third gives, to each of the testator's seven children, the sum of $10,000.

Article fourth is as follows: " After satisfying the foregoing provisions, I give and bequeath the net income of the remainder of my estate, during the lifetime of my wife, to my children above named,

in equal shares, the said remainder of my estate to be held by and in charge of my executors, the rents and income collected by them, the personal estate kept invested, and the said net income paid to my children half yearly, or as often as practicable."

Then follows article five, in these words: " Upon the death of my said wife, I direct my executors to divide all my estate then remaining, including the said $200,000 of which she had the income, in equal parts or shares, one in respect to each of my children, and to pay over or assign," etc., etc.

In accordance with the directions of article second, the executors long since paid to the New York Life Insurance and Trust Company the sum of $200,000 for the widow's benefit. She is now dead, and the fund has been returned to the executors. The entire estate remaining in their hands is, therefore, ready for distribution. Upon a former accounting, in 1878, the executors were each allowed full commissions, at the rate of two and one half, one and one quarter, and one half per cent., upon the value of all assets received by them, and at the same rate, also, upon all sums they had paid out, and upon the balance directed by the decree to be retained in their hands to await the death of the widow and the final distribution which would thereupon ensue. It is now claimed, among other things, by the accounting parties, that they are entitled to full commissions as trustees, at the rate of five, two and one half, and one per cent., upon the entire amount undistributed at the time of the former accounting. That claim is based, in large measure, upon one of the provisions of the decree

which was entered upon the judicial settlement of their accounts in 1878. The provision referred to is the following :

"That they" (the executors) "retain to themselves, in their capacity as trustees . . . . . all the remainder of the said moneys and property in their hands, as shown by the said account, and such other moneys and property, if any, as shall be received by them, or to which they shall be entitled, as such executors or trustees, to be held and accounted for by them as such trustees, upon the trusts and in accordance with the provisions and directions in the said will contained."

If the decree of 1878 did not contain the above quoted provision, I should have no hesitation whatever, in rejecting the claim of these accounting parties for commissions upon the residuary funds in their hands. It seems to me that the will requires, from the persons to whom the testator commits his estate, the employment of no other than purely executorial functions. It nowhere refers to them as "trustees," or gives to them any part of the estate in "trust," and it assigns to them no duties that could not be performed by administrators with the will annexed. As to the payment of the seven legacies, of $10,000 each, and the delivery of the $200,000 to the trust company, these acts called for ordinary executorial service, and for nothing more. It is true that the accounting parties were directed to hold the residue of the estate in their hands during the widow's life, to keep the same invested, and to pay over the income to certain beneficiaries. But, in this respect,

the terms of the will are not essentially different from those that appear in the testamentary paper that was the subject of discussion by the Court of Appeals, in Hall v. Hall (78 *N. Y.*, 535), or in the will that that court has more recently had under review, in Johnson v. Lawrence (95 *N. Y.*, 154). I think that the case at bar bears a much closer analogy to that last cited than it bears to the case of Laytin v. Davidson (95 *N. Y.*, 263), with which it has been compared by counsel for these executors. I mean no reflection upon any of the parties to the 1878 accounting, or upon any persons concerned in it, when I say that the language of FINCH, J., in Johnson v. Lawrence, seems to me to be very apposite to the situation of the affairs of this estate at the time of the entry of the 1878 decree: "The attempted change of capacity at that moment was purely constructive; not warranted by the will; needed for no purpose except as a foundation for double commissions."

And, to quote again from Judge FINCH's opinion, the point of time had not arrived when, "within the provisions of the will, and in the contemplation of the testator, it had become the duty of the executors to pay over to themselves as trustees the funds of the estate." At the date of the former decree herein, there was no reason why the executors, as such, should not have been directed to do precisely what they were enjoined to do by the will, namely, to continue their possession as executors of the residue in their hands, to pay thereout, from time to time, the accumulating income, until the return of the $200,000, and then to make complete and final dis-

tribution of the whole estate. I feel bound to hold that the decree of 1878, which dubbed the executors with the new name of trustees, did not change their real character or confer upon them any new rights or privileges. For this proposition I find abundant warrant in the criticisms of Judge FINCH, respecting the decree which was relied upon to support the contention of the accounting parties, in Johnson v. Lawrence.

As 'to such funds, therefore, as have been in the hands of the executors since their former accounting, their claim to commissions is disallowed.