In the Matter of the Estate of MAURICE BAMBERGER, Deceased.

Surrogate's Court, New York County, June 7, 1937.

*Hays, Wolf, Kaufman & Schwabacher*, for the trustees.

*Harry N. Wessel* [*A. Alexander Katz* of counsel], for Alyce B. Kaye (formerly Kirschbaum), beneficiary.

*John P. O'Brien*, special guardian for infants.

*Charles E. Buchner*, for Marguerite Leopold Bamberger, as executrix, etc., of Harry Bamberger, deceased.

DELEHANTY, S. Deceased's estate approximated $3,000,000. His general legacies amounted to $15,000. In paragraph fourth of his will he provided: " I give, devise and bequeath to my trustees, hereinafter named, the survivors and survivor of them, and their successors, such amount of money or securities as will yield an annual income of Four Thousand Dollars ($4,000.00), *in trust,*

however, and with power to invest and re-invest the same at their discretion and to pay said income in quarterly installments of one thousand dollars ($1,000.00), to my sister, Alice Kirschbaum, during her life. I direct that the first installment shall be paid within six (6) months after my death. Upon the death of my said sister, Alice, all the funds and securities so set aside and reserved shall revert to, and become a part of my residuary estate and subject to the uses and trusts hereinafter specified."

He then directed the division of his residue into eight equal parts, some of which parts he gave outright and some of which he directed to be held in trust with direction to his trustees to invest and reinvest " and to pay the net income and interest derived therefrom " to named beneficiaries. All residuary beneficiaries are deceased's children or their appointees or their issue.

The question presented is whether or not the above-quoted provision for the sister of deceased gives her the right to the definite sum of $4,000 annually or leaves her at the hazard of decrease of income should the fund in an amount selected by the executors turn out to be insufficient to produce the stated sum.

It is contended by the beneficiary that the gift to her is in the nature of an annuity and that the trustees are obliged at all times to maintain the fund with a capital sufficient in all events to produce the yearly income directed. The trustees and the special guardian for infant contingent remaindermen contend that the gift is only of income on a specific fund and that the beneficiary is entitled to whatever income is earned whether it be more or less than $4,000 per year.

The court agrees with the position taken by the beneficiary. The direction plainly is that she shall have $4,000 annually, no more and no less. There is a notable difference between the direction for deceased's sister and that for his children. In the case of the children the direction is to pay them a " net income " on so much as is held in trust for them. There is no direction as to when the payment of income to them shall begin nor is there any limitation upon the amount. In the case of the sister, the direction is that $4,000 be paid; that it be paid in quarterly installments; that each installment shall amount to $1,000; and that the first installment is to be paid within six months after the death of the testator. The children and their distributees were to have practically all of the estate. The provision for the sister required the temporary appropriation of a comparatively small part of the estate. That in turn was to go to the residuary when the sister died.

There is plainly here the expression of an intention that the definite sum of $4,000 annually shall in all events be paid to the

sister. The direction to set aside the fund is a direction which, in the circumstances of the deceased's estate as he knew it, would be easy of accomplishment. Deceased intended that his sister should have definite assurance of an amount upon which she could rely in stated amounts at stated periods.

Since the English tongue is flexible it follows that rarely, if ever, can the language of any will under construction be found to be in the precise text reported in a decided case. Decisions on similar though differing texts supporting the conclusion here reached are *Matter of Gabler* (140 Misc. 581; modfd., 235 App. Div. 807; affd., 261 N. Y. 517); *Matter of Vanderbilt* (229 App. Div. 574); *Matter of Sidenberg* (147 Misc. 742); *Matter of Kidd* (142 id. 512; 225 App. Div. 663); *Pierrepont* v. *Edwards* (25 N. Y. 128); *Matter of Burton* (156 Misc. 175).

In *Matter of Clark* (251 N. Y. 458) the opinion points out that the reversal of the lower courts is based upon the fact that the direction in the will there under scrutiny was " to pay *the net income* " of the fund directed to be set up. The opinion quotes this term " net income " (p. 464) as controlling when taken into account with the earlier text of the paragraph under construction. The commentary of the court in *Matter of Clark* respecting the case of *Matter of Kohler* (231 N. Y. 353) seems to make it plain that the latter case is to be read as supporting the conclusion here reached.

The court in *Matter of Clark* cites *Matter of Kohler* as authority for the proposition that where the fixed sum is directed to be paid the trust funds must at all times be large enough to make certain the required payments. The court there says: " As circumstances change, the funds may be reduced or increased." *Matter of Bird* (157 Misc. 748; affd., 250 App. Div. 848) follows the rule just stated. There the fund was increased when a showing was made of probable future deficit in income. In the *Bird* case the clause in the will under consideration is quite similar to the clause here for interpretation. The rule applied in the *Bird* case will here be followed. Since there has been no executorial accounting there is no need for reopening any decree setting up the fund as was required in *Griffen* v. *Keese* (187 N. Y. 454). The beneficiary is entitled now to have the court direct the setting up of an adequate fund. The liberal practice outlined in *Matter of Bird* will here be followed since the surplus income will be payable to the residuary legatees in their ratable proportions. If the parties cannot agree upon an amount to be reserved for securing the annual payment of $4,000 the court will hold a hearing on that question on request of any party in interest.

Deceased is said to have been in the investment business. He died a resident of New York county. His will was drawn in California while deceased was sojourning there. The trustees alleged that under the law of California there is no statutory prohibition against investments by trustees in non-legal securities. They argue from the combination of circumstances stated that they are free from the statutory restrictions of this State. (Pers. Prop. Law, § 21; Dec. Est. Law, § 111.) The special guardian contends that the trustees, except as expressly exempted, are subject to such statutory limitations. The court holds with the special guardian. The domicile of deceased, the place of probate of his will and the place of administration of the funds all compel the holding that the statutory limitations in this State are applicable to the conduct of the trustees respecting investments.

The will expressly grants power to the trustees to continue to hold securities found on hand among deceased's assets. It also gives them power to depart from the statutory limitations if property be acquired by reorganizations, consolidations, mergers or the exercise of rights of subscription in relation to any securities which otherwise they are entitled to hold.

Submit, on notice, decree settling the account and construing the will in accordance with this decision.