The testator, Frank L. Burdick, died January 26, 1923. He left surviving him, his widow, one child, Lura L. Slemons, a resident of California, her son, James B. Slemons, and the children of a deceased daughter, namely Rafaela Dorrance and Frank L. Tennent. After making provisions in his will for the widow and various specific bequests and legacies, the testator set up a trust in paragraph nine of his will as follows:
"All the rest, residue and remainder of my estate, of every name and description, real and personal, I give, devise and bequeath to Wilson Roose, Byron S. Spofford, and Homer B. Jacobs, who are named executors herein, in trust for the following uses, intents and purposes: I hereby authorize, empower and direct that my said trustees shall sell, convert and invest all of my property, both real and personal, hereby conveyed to them in trust, into such interest-bearing securities as in their judgment they shall deem best: Provided, that such trustees may, if they deem it best, retain as a part of such investment all corporate stocks held by me in the Branch County Savings Bank of Coldwater, Michigan, and in the Citizens State Bank of Sturgis, Michigan, and in the Sturgis National Bank of Sturgis, Michigan, *Page 100 
subject to right of election herein willed to my wife, and out of the income derived therefrom shall pay the necessary expenses attending such trust, subject to the provisions hereinafter made for the disposition of the principal and income, or any part thereof, of my estate. I further will and direct that if any of the bank stock of any of the above-named banks are sold, then all of said bank stock of the particular bank must be sold at the same time. My said trustees shall set aside, invest and keep invested in good securities, the sum of $65,000, the income of which said sum of $65,000, at the prevailing rate of interest, but in no event shall such rate of interest be less than five per cent., shall be paid semi-annually to my daughter, Lura L. Slemons, for and during the term of her natural life and in case said amount of $65,000 so set apart should become impaired, during the term of the natural life of my said daughter Lura L. Slemons, then and in that case my said trustees are expressly authorized and directed to restore the same from the residue of my estate in their hands."
In clause ten the testator provided that after the death of Lura L. Slemons the $65,000 trust fund should go, $10,000 to Rafaela Dorrance or her children; $25,000 to James B. Slemons or his children; $30,000 to Frank L. Tennent or his children. He also provided that the residue of his estate was to be held by the trustees and various specific legacies paid to testator's two grandsons upon their complying with specified conditions as to financial worth. Finally, one-half of the residue was to be paid to each grandson upon similar conditions.
May 3, 1926, the will came before the circuit court of St. Joseph county for interpretation. Upon stipulation of all interested parties, it was ordered that the trustees under the will set aside the sum of $15,000 of the residue of the estate for the purpose *Page 101 
of making good any impairment which might take place in the principal of the trust fund created for the benefit of Lura L. Slemons; and that the remainder of the residue be released from the trust and distributed in accordance with the terms of the will and the stipulation of the parties.
Subsequently the trust fund became impaired to the extent that $23,000 worth of bonds in the $65,000 fund are in default and all of the assets of the $15,000 impairment fund are in default with the exception of $2,000. The trustees have on hand $2,000 in cash from the redemption of bonds in the $65,000 fund.
During 1932 Mrs. Slemons failed to receive from the trustees the usual amount of interest and claims there is due her $1,375. Of this amount $500 was later paid, reducing the amount to $875. The trial court held that Mrs. Slemons was entitled to receive the income from the $15,000 impairment fund as well as the income from the trust fund of $65,000 but nothing fromcorpus. From this order defendant Lura L. Slemons appeals. Appellant claims that the will created an annuity of $3,250 for her and that she is entitled to the sum of $875 to be taken from the $2,000 cash held by the trustees as part of the corpus
of the trust fund.
The question before us is whether it was the testator's intention to give Mrs. Slemons an annuity for a definite sum charged upon both income and principal of the trust fund, or whether he intended to give her the income only, whatever that might be, and preserve the principal for the remaindermen.
"An annuity in the ordinary sense of the term is a right to the payment of a specified sum of money at stated intervals, usually annually or at aliquot parts of a year." 2 Page on Wills (2d Ed.), § 1035. *Page 102 
The distinction between a gift of an annuity and one of income is frequently important.
"One of the chief points of difference in effect between a gift of income and an annuity is, that a gift of income fails if the principal of the estate is not sufficient on investment to pay the income bequeathed; while an annuity does not fail because the net income is insufficient to pay it in full, but is payable out of the principal, unless the principal is disposed of by the will in such a way that the gift thereof is on an equality with the annuity or has priority over it in case of abatement, or unless the will shows an intention to pay the annuity out of the income alone." 2 Page on Wills (2d Ed.), § 1036.
In Matter of Dewey, 153 N.Y. 63 (46 N.E. 1039), there was a bequest to the widow of "the interest upon the sum of $12,000 to be paid to her annually during the period of her natural life." This was held to be a gift of the actual net income of the fund rather than an annuity of $720 which might be charged upon the corpus.
In Re VonKeller's Estate, 28 Misc. Rep. 600
(59 N. Y. Supp. 1079), affirmed in 47 App. Div. 625 (62 N.Y. Supp. 1150), the testator directed his trustees to set aside a sum sufficient to yield an annual income of $250 and to pay said interest and income to the testator's sister for life, at her death the principal to be added to the residuary estate. The sum of $5,000 was set aside. This amount was afterwards impaired to $3,500. It was held that the corpus could not be used to make up the $250 for the sister, as the gift was one of income and the gift over to residuary legatees showed an intent that thecorpus be unimpaired.
In Re Velie's Estate, 119 Misc. Rep. 15 (194 N.Y. Supp. 891), the testator directed his executors to set *Page 103 
aside such portion of his estate "as is necessary to guarantee an annual dividend of $12,000 a year, to remain intact so long as my wife * * * shall live. The income created from this fund to be paid to my wife * * * at the discretion of the executors." There was a gift over on the wife's death. The income from the total estate amounted to less than $12,000 a year. It was held that the corpus of the estate could not be invaded to make up the $12,000, the gift being not an annuity but a direction to pay the net income and no intention shown to prefer the widow over the remaindermen.
The cardinal principle in the interpretation of wills is to arrive at and carry out the intention of the testator if it is lawful. Morrison v. Estate of Amasa Sessions, 70 Mich. 297
(14 Am. St. Rep. 500).
Although a will makes a plain gift of an annuity, the testator's intention may be that it shall be payable from income only and not from corpus.
"If the will provides that a certain sum be paid annually or monthly to the widow and that at her death the residue be divided between, or paid over to, other persons, the intention would seem to be that the capital shall be drawn upon to make up the deficiency in the annuity. * * * But where the terms of the gift over show, that the testator intended the fund to be continued in its integrity during the life of the annuitant, and in that state to go over, the corpus cannot be resorted to to make up a deficiency in the annuity." Einbecker v.Einbecker, 162 Ill. 267, 276, 277 (44 N.E. 426).
An examination of the will shows that the testator in providing for the trust fund does not name a specified amount that Mrs. Slemons is to receive yearly, and does not use the word "annuity;" that if the annual income exceeds $3,250, the life tenant *Page 104 
takes the excess; that paragraph ten of the will makes definite gifts to the remaindermen which added together entirely consume the $65,000, thus indicating that the testator contemplated the principal would be kept intact for the remaindermen.
We must therefore conclude that the gift to Mrs. Slemons was a gift of the income of $65,000 and not an annuity of $3,250, and that the proviso regarding five per cent. interest was a mere direction to the trustees.
Judgment affirmed. However, since plaintiff has filed no brief, no costs will be allowed.
NELSON SHARPE, C.J., and POTTER, NORTH, FEAD, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.